UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   No. 4:17-CR0300 HEA ) |
| DAWN RHODES, | ) ) |
|     Defendant. | ) |

### UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The United States of America, through undersigned counsel, opposes Defendant's Motion for Compassionate Release. Doc. No. 162. The only arguably "extraordinary and compelling reason" Defendant identifies is her moderate, which is well managed, coupled with the COVID-19 pandemic, and that consideration does not outweigh the factors this Court considered in imposing her below-Guidelines sentence. Thus, Defendant's motion should be denied.

### BACKGROUND

On May 16, 2019, the defendant was found guilty following a jury trial of eight counts of an eight count Second Superseding Indictment. Counts 1 through 4 charged Health Care Fraud, in violation of 18 U.S.C. § 1347; Counts 5 through 8 charged False Statements Involving Health Care Matters, in violation of 18 U.S.C. § 1035. PSR ¶ 1. The evidence at trial established that between February 2013 and December 2017, the defendant, while employed as a podiatrist, falsified her patients' progress notes in a manner that would ensure reimbursement of services which would otherwise not be covered by Medicare. The defendant engaged in this conduct while employed at Aggeus Healthcare, P.C. (Aggeus), KG Health Partners, and Absolute Elder Care. PSR ¶ 13. The Presentence Investigation Report determined that the defendant's base offense

1

level was 6, and because the loss caused by her offense was more than $550,000, she was subject to a 14 level increase. PSR ¶ 38, 39. Further, because the defendant abused her position of trust in a manner that facilitated the commission of the offense, she was subject to a 2 level increase. PSR ¶ 41. The PSR further determined that the defendant had willfully impeded or obstructed justice, resulting in an additional 2 level increase. PSR ¶ 42. The defendant's total offense level was 24, which resulted in a Sentencing Guidelines range of 51 to 63 months. PSR ¶ 84.

At the time of sentencing, the United States urged upon the Court the necessity of an incarceratory sentence, citing both the defendant's ongoing failure to take responsibility for her actions and the fact that the defendant, unlike similarly situated defendants in a related case, had continued to commit the same type of Medicare fraud at multiple, successive employers. Doc. No. 136. On August 13, 2019, this Court adopted the PSR's sentencing calculations and factual findings, and imposed a sentence of 18 months' imprisonment, a 33 month downward variance from lowest end of the Sentencing Guidelines range of 51-63 months. Doc. Nos. 139, 140.

The defendant surrendered to the custody of the Bureau of Prisons on November 19, 2019, and is currently housed at Aliceville FCI. Doc. No. 149. She is eligible for release to home confinement on January 26, 2021, at which she will have served just over 15 months in prison. Doc. No. 163. The defendant's Sentencing Guidelines range was 51-63 months. PSR ¶ 84.

The defendant is 44 years-old. Doc. No. 162 at 1. On April 24, 2020, the defendant filed a request with the Warden at Aliceville FCI seeking compassionate release in view of the COVID pandemic and the fact that the defendant suffers from asthma. Doc. No. 158 at 4. The Bureau of Prisons denied that request, concluding that

> a review of your recent medical summary reflects you are in good health and do not suffer from any chronic conditions. You have been diagnosed with asthma that is currently well controlled.

2

> Although you have this diagnosis, it does not prevent you from independently attending to your activities of daily living.

Attachment A. On June 11, 2020, the defendant filed a *pro se* motion with this Court seeking compassionate release, citing her history of asthma. Doc. No. 158 at 3. On August 14, 2020, the Office of the Federal Defender filed a supplemental motion for compassionate release on behalf of the defendant. Doc. No. 162. On August 26, 2020, the United States Probation Office filed a report indicating that "it would appear that the inmate's medical condition rises to the level of extraordinary and compelling reasons that would warrant a reduction outlined under USSG § 1B1.13(1)(A) based upon her pre-existing moderate to severe asthma." Doc. No. 163 at 4. In that same report, the Probation Office acknowledged that "this condition can be treated within the BOP." *Id.*

This matter is now before the Court on Defendant's motion for compassionate release, wherein Defendant argues that her asthma, which is currently under treatment with an inhaler and from which she has experienced no complications, constitutes an "extraordinary and compelling reason" justifying her release after serving less than twelve months in BOP custody.

## ARGUMENT

As this Court recently instructed in denying a request for early release based on COVID-19: "The law is clear: absent statutory authority, the Court cannot reduce a final sentence." *United States v. Adem*, No. 4:19-cr-00676-AGF, slip op. at 1 (Mar. 19, 2020) (ECF No. 242) (rejecting an unopposed request for early release of just six days in light of the coronavirus pandemic); *Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (quoting 28 U.S.C. § 3582(b)). Here, Defendant seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act.

3

"In December 2018, as part of the First Step Act, Congress worked a change to the rule of long standing that a court could only modify a sentence upon motion from the Bureau of Prisons." *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (quotation and brackets omitted). To allow prisoners to petition courts directly for compassionate release while still giving BOP the first opportunity to evaluate such requests, Congress amended section 3582(c) to include the following language:

> (c) The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, ***or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier***, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c) (emphasis added). Thus, a defendant may now move the sentencing court for a reduced sentence but only "after (1) fully exhausting his administrative remedies, or (2) a lapse of 30 days from the warden's receipt of the defendant's request." *United States v. Miller*, No. 2:16-CR-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020).

While the First Step Act changed *who* could file a motion for compassionate release, it did not alter the requirements for granting relief. *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) ("Congress in fact only expanded access to the courts; it did not change the standard."). Under the unmodified language in section 3582(c)(1)(A)(i), a sentencing court may reduce a term of imprisonment only for "extraordinary

4

and compelling reasons." This phrase, in turn, is defined by the Sentence Commission's binding policy statement in section 1B1.13 of the Guidelines Manual. *See United States v. Korn*, No. 11-CR-384S, 2020 WL 1808213, at *3 (W.D.N.Y. Apr. 9, 2020) ("Congress delegated to the Sentencing Commission the task of [defining this phrase]."). Significantly, section 1B1.13 "limits the universe of extraordinary and compelling reasons to five categories": (A)(i) terminal illness, (A)(ii) debilitating medical conditions, (B) advanced age, (C) death or incapacitation of certain family members, and (D) other extraordinary and compelling reasons determined by BOP. *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, at *2 (S.D. Ala. Aug. 13, 2019) (citing U.S.S.G. § 1B1.13 cmt. n.1). Additionally, before granting early release, the court must verify that the "defendant is not a danger to the safety of any other person or to the community" and consider whether a lesser sentence is appropriate under the section 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2).

Applying this framework to the present case, the Court must deny Defendant's request, because she does not qualify for a reduced sentence under the First Step Act.

**I.   The Defendant does not qualify for early release under section 3582(c)(1).**

   ***a.  Defendant's asthma, which is managed with self-administered medication and has resulted in no complications, coupled with the present pandemic is the only arguably "extraordinary and compelling" reason under section 1B1.13.***

While COVID-19 has impacted the lives of all Americans, Defendant has not identified an "extraordinary and compelling" reason that "warrant[s]" a reduction in sentence under section 1B1.13.  The Defendant fails to identify any circumstances that can justify release. To qualify for early release, a defendant must demonstrate that at least one of the "extraordinary and compelling reasons" identified in section 1B1.13 of the Sentencing Guidelines warrants a reduced sentence in his or her particular case. *See, e.g.*, *United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3082202,

5

at *1 (S.D. Ala. July 15, 2019) ("The Commission's policy statement thus establishes the boundaries of what may and may not be judicially determined to be extraordinary and compelling reasons for a sentence reduction."). "[B]ecause [Defendant's] grounds for relief do not accord with any of these categories, he cannot successfully obtain a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)." *Brummett*, 2020 WL 1492763, at *3.

Application Note 1 of section 1B1.13 provides a defined universe of extraordinary and compelling reasons that qualify a defendant to be considered for early release. First, this standard is met if a defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, certain debilitating medical conditions qualify, provided that the defendant is:

> (I) a suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1(A)(ii). However, as the District Court in the Western District of Missouri observed just last year, "a compassionate release due to a medical condition is an extraordinary and rare event." *White*, 378 F. Supp. 3d at 787. Section 1B1.13 also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)–(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling

Here, Defendant argues her asthma, which potentially qualifies under A(ii) during the present pandemic, is sufficient to merit the remedy of compassionate release. However, the

6

defendant's medical records demonstrate that she has experienced no critical episodes related to her asthma, she has refused maintenance medication, and is currently able to treat her asthma using a self-administered inhaler as infrequently as once or twice per week.

Specifically, defendant argues that her asthma, which potentially qualifies under A(ii), coupled with the spread of the coronavirus, is sufficient to merit the remedy of compassionate release.  However, the defendant's medical records demonstrate that she has experienced no critical episodes related to her asthma, she has refused maintenance medication, and is currently able to treat her asthma using a self-administered inhaler as infrequently as once or twice per week. defendant argues that her "medical vulnerability to complications from COVID-19, and her current residence at an infected facility" constitute extraordinary and compelling circumstances warranting his release.  Doc. No. 162 at 14.  The defendant's identified "vulnerability" is her asthma, which is currently being managed through use of an inhaler.  Doc. No. 162 at 2.  The patient's BOP medical records indicate that in 2019, she was issued a prescription by a BOP certified nurse practitioner for an albuterol inhaler, to be used as needed.  Attachment B at 20.  Interestingly, in the defendant's supplemental motion for compassionate release, she indicates that "in the nine months that Ms. Rhodes has been in Aliceville she has not seen a doctor."  Doc. No. 162 at 12.  The defendant's medical records, appended to this filing as Attachments B and C, indicate that the defendant has actually been treated by a certified nurse practitioner, who specifically consulted with her regarding her asthma, Attachment B at 20 (treatment note completed by Certified Nurse Practitioner Shanquail Horton).  Significantly, the patient refused maintenance medication for asthma, and also indicated to the treating nurse practitioner that she only used her inhaler "1-2 times weekly."  *Id.*  Medical records from 2019 do not reflect the occurrence of any severe or debilitating asthmatic episodes.  Attachment B.  Further, as her medical

7

records from 2020 indicate, Defendant in fact received a prescription for an inhaler from a medical doctor while in the custody of BOP. *See* Attachment C at 8 (note reflecting prescription for inhaler written by Xinyu Li, MD, and indicating that the inhaler should *not* be used daily, but only as needed). It is worth noting that the defendant stands convicted of healthcare fraud, and in her motion seeking compassionate release from custody, despite the significant sentencing variance she has already enjoyed, she misrepresents her own medical records, falsely indicating that she has received no treatment from a doctor, despite the fact that a BOP doctor prescribed her an inhaler to use as needed.

Although it is true that individuals with asthma are more susceptible to COVID-19 and more likely to become severely ill they contract the virus. *See* Centers for Disease Control, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. During the present pandemic, a number of courts have found that chronic medical conditions that might not otherwise qualify under Application Note 1(A)(ii) now "substantially diminish[] the ability of the defendant to provide self-care" in light of the risks related to COVID-19. *See United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (finding that a combination of HIV/AIDS, diabetes, and severe obesity "render [defendant] uniquely vulnerable to serious illness if he contracts COVID-19" and thus "substantially diminish his ability to provide self-care"). However, many others have rejected this reading of section 1B1.13. *See, e.g,*, *Clark*, 2020 WL 1557397, at *4 ("Defendant cites no authority for the proposition that the *fear* of contracting a communicable disease warrants a sentence modification."); *Lynn*, 2019 WL 3082202, at *1–2 (denying compassionate release despite "a welter of health issues" identified by defendant because he failed to show that they

8

would "substantially diminish his ability to care for himself in a prison setting").[1] In any event, even if the Court were to find that Defendant's motion qualifies for *consideration* under the First Step Act, it does not follow that her request *merits* relief.

While Defendant has shown a particularized susceptibility to COVID-19, courts have required defendants to demonstrate "a particularized risk of contracting the disease at his prison facility." *See United States v. Henley, Jr.*, No. 4:18-CR-01027-RLW, slip op. at 5 (E.D. Mo. June 17, 2020) (citing *United States v. Feiling*, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)). Defendant fails to show that her continued incarceration at Aliceville FCI warrants a reduction in sentence. In this regard, it is important to highlight the efforts that BOP has undertaken to mitigate coronavirus-related risks at its facilities. Effective March 13, BOP implemented Phase Two of its COVID-19 Action Plan, which required all facilities to "to mitigate the spread of the COVID-19" with proactive measures that included: (1) prohibiting all social and volunteer visits; (2) restricting legal visits (with case-by-case exceptions); (3) suspending inmate facility transfers (with allowances for medical treatment); (4) requiring staff health screening; (5) adopting a variety of coronavirus-specific protocols for inmates, such as screening new inmates and isolating and testing inmates with risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. *Id.* Since then, BOP has continued to refine its efforts with regular updates. *See* Fed. Bureau of Prisons, *COVID-19 Action Plan: Phase Five*, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (Mar. 31, 2020). For example, Phases Four through Nine include new measures, like quarantining all incoming inmates

---

[1] *See United States v. Harris*, No. 4:12CR184 HEA (E.D. Mo. July 14, 2020) (ECF No. 114) (denying defendant's for compassionate release despite a childhood history of asthma, finding that the defendant had failed to establish extraordinary or compelling reason); *United States v. Eason*, No. 4:18 CR 419 RWS (E.D. Mo. July 8, 2020) (ECF No. 73) (denying motion for compassionate release where the defendant had asthma, high blood pressure, obesity, sleep apnea, finding that defendant failed to present qualifying extraordinary and compelling reason under 1B1.13); *United States v. Taylor*, No. 4:18 CR 642 CDP (E.D. Mo. Aug. 10, 2020) (ECF No. 62) (denying motion for compassionate release in part because health issues, including asthma and high blood pressure, well managed).

for at least fourteen days and securing inmates in their quarters to decrease the potential for transmission. *Id.*; Fed. Bureau of Prisons, *COVID-19 Action Plan: Phase Six*, https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf (Apr. 14, 2020). As a result of these proactive steps, BOP has kept the overwhelming majority of federal inmates virus-free and generally has limited transmission to a fraction of inmates where positive cases have occurred.

By failing to even discuss the safeguards in place at Aliceville FCI, Defendant has "not shown that the [BOP] plan . . . is inadequate to manage the pandemic [at Aliceville FCI], or that the facility is specifically unable to adequately treat her." *See Gileno*, 2020 WL 1307108, at *4. It is true, as Defendant notes, that a handful of inmates at Aliceville FCI have tested positive for COVID-19. *See* Fed. Bureau of Prisons, *Covid-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last visited Sept. 9, 2020). But courts consistently have found that "[t]he mere presence of the virus . . . does not automatically translate to the release of [a defendant]." *See United States v. Veras*, No. 3:19-CR-010, 2020 WL 1675975, at *5 (M.D. Pa. Apr. 6, 2020) (collecting cases). For example, in denying a compassionate-release motion from a facility with a significant coronavirus outbreak, the *Korn* Court explained that "the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that [BOP] will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme." 2020 WL 1808213, at *6; *see also United States v. Seymon*, No: 11-cr-10040-JES, 2020 WL 2468762, at *1, *4 (C.D. Ill. May 13, 2020) (finding no "extraordinary and compelling reason" to release a defendant with diabetes, high cholesterol, and a history of smoking from a facility with nearly 250 inmates testing positive for COVID-19); *Roberts*, 2020 WL 1700032, at *1 (denying release for HIV-positive

10

inmate at a facility with confirmed cases of COVID-19). Other courts have questioned whether defendants are "actually at any greater risk of contracting the virus inside [a facility] than outside," even at prisons where there have been confirmed cases, because "BOP is able to impose restrictions" on inmates in compliance with CDC guidelines, which there is no guarantee the inmates would follow "outside prison walls." *See United States v. Wright*, No. 17-CR-695 (CM), 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020).

Here, there is no evidence indicating that Aliceville FCI has failed to "provide[] requested medical attention to Defendant" for her or will be unable to care for Defendant were she to contract COVID-19. *See Seymon*, 2020 WL 2468762, at *4.  Moreover, any potential harm to Defendant of remaining at Aliceville FCI must be weighed against the danger granting release poses to the community and others, which in this case includes the risk of spreading COVID-19. *See Clark*, 2020 WL 1446895, at *7. Just like quarantine situations outside of prisons, "the tragic paradox [is] that if conditions somewhere outside the [facility] are better, then transferring an exposed inmate into those conditions could threaten the safety of those already there." *See United States v. Russo*, No. 1:16-cr-00441-LJL, slip op. at 5 (S.D.N.Y. Apr. 3, 2020) (ECF No. 54).  Thus, Defendant has failed to meet her burden of showing that facility-specific considerations qualify as an "extraordinary or compelling reason" that would make release appropriate here. *See Gileno*, 2020 WL 1307108, at *4 (noting that, without particularized evidence of inadequate care, "the Court cannot assume that [BOP] will be unable to manage the outbreak or adequately treat [the defendant]").

Even assuming Defendant qualifies for consideration under section 1B1.13, the request for a sentence reduction should be denied because Defendant has failed to demonstrate that she no longer poses a danger to the community or that she otherwise merits release under the § 3553(a)

11

factors. "In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a)." *Gileno*, 2020 WL 1307108, at *1; *see also* 18 U.S.C. § 3582(c)(1)(A) (directing courts to consider these factors for every request for early release). *United States v. Buckner*, No. 4:17 CR 69 RWS (E.D. Mo. Aug. 18, 2020) (ECF No. 173)("Given that defendant already received a sentence much lower than the guideline range, to further reduce his sentence would not be consistent with the § 3553 factors."). Additionally, "a reduction in sentence under [the First Step Act] requires a determination that '[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" *Eberhart*, 2020 WL 1450745, at *2 (quoting U.S.S.G. § 1B1.13(2)). A defendant's failure to show that *both* section 3142(g) *and* section 3553(a) favor a reduced sentence is fatal to such a request. *See United States v. Brummett*, No. 6:07-103-DCR, 2020 WL 1492763, at *3–4 (E.D. Ky. Mar. 27, 2020) (concluding that the danger defendant posed to the community and the section 3553(a) factors each provided an independent basis for denying a request for compassionate release).

  Here, Defendant's motion does not show that she no longer poses a danger to the community. As the government argued at the time of the Defendant's sentencing, this defendant committed a fraud costing the taxpayers hundreds of thousands of dollars, and at no point during the years-long investigation expressed any acknowledgement or understanding of the impact or scope of her fraud. *See United States v. Jinwright*, No. 3:09-CR-00067-W, 2010 WL 2926084 (W.D.N.C. July 23, 2010) (finding that economic/financial danger also constitutes a danger to the community). Unfortunately, her present motion reflects the exact same fundamental unwillingness to operate in candor. In the very motion before this Court, the defendant falsely contends that she has not received treatment from a doctor while in BOP custody, when the records reflected in Attachments B and C to the present filing flatly contradict this statement. Not only has the

defendant been offered medical treatment while in BOP custody, she has DECLINED maintenance treatment for the very medical condition she now contends justifies her early release from an already radically reduced sentence from that to which the United States Sentencing Guidelines suggested she was subject. *See* Attachment B at 20 ("Refused maintenance medication for asthma").

Nothing about the COVID-19 pandemic reduces Defendant's danger to others. In fact, the pandemic appears to have provided yet more evidence of the defendant's fundamental inability to be candid and honest in her dealings with healthcare. All evidence before this Court indicates that this Defendant remain intractably fixed in mindset that she will make whatever representations are needed for her to advance her own interests. The Defendant has already benefitted from enormous grace on the part of the sentencing court. She has yet to make a convincing case that anything about her current, entirely manageable health condition, warrants the extension of yet more grace.

In sum, the above considerations militate against a sentence reduction and outweigh Defendant's concerns related to COVID-19. Defendant's motion presents no new evidence that meaningfully shifts the balance of the 3142(g) or 3553(a) factors in Defendant's favor. *See Eberhart*, 2020 WL 1450745, at *2 (denying request for release because the "defendant fail[ed] to demonstrate that the § 3142(g) factors considered at the time detention was ordered, or the § 3553(a) factors considered by the court at the time of sentencing . . . have materially changed"). Accordingly, because Defendant has not met her burden of demonstrating that these considerations support release, her request for release must be denied on this basis.

**II. The Court lacks jurisdiction to resentence the Defendant to home confinement, as BOP has "plenary control" over designation of inmates.**

Defendant also requests that the Court resentence her to home confinement as an alternative to/part of her request for compassionate release. The Defendant indicates that she will live with

13

her brother, who is a flight attendant. Doc. No. 162 at 13. If anything, co-occupying a home with an individual whose profession requires regular interstate travel by its very nature would hardly seem preferable to a facility in which she has ready access to medical care. The Court must deny this request because it "has no authority to designate the place of confinement." *Eberhart*, 2020 WL 1450745, at *3. Instead, well-settled precedent recognizes that the BOP has complete authority to determine where an inmate is confined.

"While a [district court] judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) (citation omitted). Indeed, as the Supreme Court has made clear, "the BOP has *plenary control* . . . over 'the place of the prisoner's imprisonment.'" after the court imposes its sentence. *Tapia v. United States*, 564 U.S. 319, 331 (2011) (citing 18 U.S.C. §§ 3621, 3624) (emphasis added). Furthermore, a number of courts have concluded that the COVID-19 pandemic does nothing to unsettle this long-standing rule. *See, e.g.*, *United States v. Oliver*, No. CR JKB-16-0485, 2020 WL 1505899, at *1 (D. Md. Mar. 30, 2020) ("[I]t is inherently the authority of the Bureau of Prisons to transfer an inmate to home confinement pursuant to 18 U.S.C. § 3624(c)."); *United States v. Williams*, No. CR JKB-15-0646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020) (same); *Garza*, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020) ("[T]he Court lacks authority to designate home confinement."). Thus, regardless of the Court's determination on compassionate release, the authority to determine Defendant's placement for the remainder of his sentence rests solely with the BOP. Any suggestion to the contrary must be rejected out of hand.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Defendant's motion, consistent with the overwhelming majority of courts that have considered requests for compassionate release in light of COVID-19 pandemic.[2] *See Adem*, slip op. at 1; *Aguila*, 2020 WL 1812159, *2; *Albertson*, 2020 WL 1815853, at *1–2; *Brown*, 2020 WL 1479129, at *1; *Carver*, 2020 WL 1604968, at *1; *Clark*, 2020 WL 1557397, *1, 3; *Eberhart*, 2020 WL 1450745, at *2; *Garza*, 2020 WL 1485782, at *1–2; *Gileno*, 2020 WL 1307108, at *4; *Hernandez*, 2020 WL 1445851, at *1; *Johnson*, 2020 WL 1663360, at *2–6; *Korn*, 2020 WL 1808213, at *8; *Ogarro*, 2020 WL 1876300, at *6; *Raia*, 954 F.3d at 597; *Reeves*, 2020 WL 1816496, at *1; *Roberts*, 2020 WL 1700032, at *2; *Seymon*, 2020 WL 2468762, at *4; *Weber*, slip op. at 4; *Wright*, 2020 WL 1922371, at *3; *Zywotko*, 2020 WL 1492900, at *1.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

 */s/ Gwendolyn E. Carroll*
Gwendolyn E. Carrol. NY#4657003
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

---

[2] The Court should not grant a sentence modification absent a release plan that includes specific conditions for avoiding COVID-19. Additionally, the Government requests that any order granting release accommodate the need to quarantine a defendant for a period of at least fourteen days to protect public health. Specifically, the Court should retain jurisdiction over the motion for fourteen days if it makes a determination to grant release, while advising the parties of that decision. BOP will then place the inmate in quarantine. If the defendant has not displayed symptoms or tested positive for COVID-19 during that period, the Court may then order release. If the defendant does tests positive during the initial fourteen-day period, the Government will notify the Court and seek an extension of the release date until the defendant has tested negative.

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 11, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

                                                */s/ Gwendolyn E. Carroll*
                                              Gwendolyn E. Carroll NY#4657003
                                              Assistant United States Attorney